**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 11-5061

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOSE CIRO JUAREZ-SANTAMARIA,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Liam O'Grady, District Judge. (1:11-cr-00217-LO-1)

Argued: January 31, 2013                    Decided: March 8, 2013

Before TRAXLER, Chief Judge, and KEENAN and THACKER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Eugene Victor Gorokhov, Arlington, Virginia, for Appellant. Patricia Tolliver Giles, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Charles Burnham, Ziran Zhang, BURNHAM & GOROKHOV, PLLC, Washington, D.C., for Appellant. Neil H. MacBride, United States Attorney, Michael J. Frank, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Jose Ciro Juarez-Santamaria, a/k/a Sniper, ("Juarez") was indicted on charges of transporting a minor for prostitution, sex trafficking of a minor, and conspiracy. Prior to trial, Juarez attempted to plead guilty pursuant to a plea agreement. Because the court was not satisfied that Juarez was admitting to the offense conduct at the Rule 11 hearing, it refused to accept his guilty plea. The case proceeded to trial, where a jury convicted Juarez of all counts in the indictment. Juarez now challenges several aspects of the Rule 11 hearing. Finding no reversible error, we affirm.

I.

Juarez is a member of the MS-13 gang. Through his involvement in the gang, Juarez and his associates orchestrated the prostitution of a twelve-year-old girl named G.T. During the course of three to four months, Juarez set up clients for G.T. in Maryland, Virginia, and the District of Columbia, and he transported her to meet these clients. Although he never physically drove G.T. in a vehicle to meet with clients, he always either asked someone to drive for him while he rode along or he transported G.T. on the Washington Metropolitan Area Transit Authority.

2

In May 2011, Juarez was indicted for conspiracy to transport a minor for the purpose of prostitution and for sex trafficking, see 18 U.S.C. §§ 371, 1591, 2423(a) ("Count 1"); transporting and aiding and abetting the transportation of a minor for the purpose of prostitution and unlawful sexual activity, see 18 U.S.C. §§ 2, 2423(a) ("Count 2"); and sex trafficking and aiding and abetting the sex trafficking of a child, see 18 U.S.C. §§ 2, 1591 ("Count 3"). In July 2011, Juarez entered into a plea agreement with the government through which he agreed to plead guilty to Count 2 in exchange for the dismissal of the other counts in the indictment. He and the government also signed a joint statement of facts in which Juarez stipulated to the allegations contained in Count 2 of the indictment.

The day after entering into this plea agreement, Juarez appeared before the district court for his Rule 11 hearing. At the hearing, Juarez admitted that his signature appeared on the plea agreement and on the joint statement of facts. However, when asked whether the joint statement of facts was "true and accurate in all respects," Juarez said "[i]t [was] not the truth." J.A. 44. When the court began to recess the matter and set the case for trial, Juarez protested, claiming that he misunderstood the court's question. The court then repeated the question in Spanish, which is Juarez's native language, and

3

Juarez initially acknowledged that the statement of facts was true.

Later in the plea colloquy, however, the court emphasized that for the government to convict Juarez on Count 2, it would have to prove that he "transported" G.T. J.A. 60. The court then asked Juarez again whether he committed the acts charged in Count 2, but Juarez would not say "yes." Instead, he insisted, "I was with the person who was transporting her. It wasn't me who was transporting her." J.A. 61. The court then asked defense counsel if he needed a recess to communicate with his client. Instead of taking the recess, defense counsel attempted to explain to the court Juarez's alleged confusion, saying that he "believe[d] the distinction [was] the word 'transport', and Mr. Juarez ha[d] difficulty in distinguishing between the word 'transporting' and driving the car." J.A. 62. The court then asked more pointed questions about Juarez's role, but Juarez continued to refuse to admit to playing any role in transporting G.T. At that point in the plea colloquy, defense counsel asked for a five-minute recess, but the court did not respond and merely continued questioning Juarez.

Finally, the court asked Juarez one final, specific question: "Did you, with another person, take this young woman, this child, somewhere for purposes of prostitution?" J.A. 64. Juarez responded, "That's what I said, but it was not true."

4

J.A. 64. At that point, the court refused to accept Juarez's guilty plea and set the case for trial. As noted, a jury ultimately convicted Juarez of each count in the indictment, and he was sentenced to life imprisonment.

## II.

Juarez's first argument on appeal is that the court's denial of his request for a five-minute recess violated his right to counsel under the Sixth Amendment, or alternatively amounted to an abuse of discretion. The Sixth Amendment guarantees a criminal defendant the right to the assistance of counsel at all "[c]ritical stages," which includes "the entry of a guilty plea." Missouri v. Frye, 132 S. Ct. 1399, 1405 (2012). However, "[n]ot every restriction on counsel's . . . opportunity to . . . consult with his client . . . violates a defendant's Sixth Amendment right to counsel." Morris v. Slappy, 461 U.S. 1, 11 (1983). In this case, prior to defense counsel's request for a brief recess, the court offered him a brief recess, which he did not take. Moreover, while the court prevented counsel from temporarily communicating with Juarez in private, it did not prevent him from communicating with Juarez in public, in open court. Under these circumstances, the district court did not abuse its discretion by denying the brief recess, see United States v. LaRouche, 896 F.2d 815, 823 (4th Cir. 1990) ("In order

5

to prove an abridgment of the sixth amendment right to effective assistance of counsel based on an allegedly wrongful denial of a continuance, a defendant must first demonstrate that the district court abused its discretion in denying the motion." (internal quotation marks omitted)), and the denial of the recess did not amount to a Sixth Amendment violation, see Morris, 461 U.S. at 11.

III.

Juarez's second argument is that the district court abused its discretion, see Santobello v. New York, 404 U.S. 257, 262 (1971), in refusing to accept his guilty plea.[*]  We disagree.

"There is . . . no absolute right to have a guilty plea accepted," and "[a] court may reject a plea in exercise of sound judicial discretion."  Id. at 262.  Rule 11 requires that

---

[*] The government argues that Juarez never objected to the court's rejection of his plea and that we, therefore, review for plain error only.  We do not think Juarez, after asking the court to accept his plea, was required to object when the court refused to accept it.  See United States v. Mancinas-Flores, 588 F.3d 677, 686 (9th Cir. 2009) (noting that when a "defendant ask[s] the court to accept his plea and argue[s] in favor of it," he does "not have to ask the court to reconsider its decision or point out possible errors in the decision" in order to preserve the claim for appellate review).  And even if he was required to object, we believe that he satisfied that requirement by stating, in reference to the joint statement of facts, "But I signed it.  I signed it.  Why am I going to go to trial?"  J.A. 44.

"[b]efore entering judgment on a guilty plea, the [district] court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). "The trial court has wide discretion in determining whether a factual basis exists," United States v. Morrow, 914 F.2d 608, 611 (4th Cir. 1990), and the court may make that determination "by having the accused describe the conduct that gave rise to the charge." Santobello, 404 U.S. at 261.

Juarez's first claim, couched as two separate arguments in his brief, is that the court failed to exercise any discretion at all and instead refused to accept the guilty plea based on a misunderstanding of the law. According to Juarez, the court incorrectly believed it could not accept the guilty plea unless Juarez believed he was guilty and admitted to the offense conduct during the plea hearing. See United States v. Mastrapa, 509 F.3d 652, 660 (4th Cir. 2007) ("[T]he district court need not rely only on the Rule 11 plea colloquy [and] may conclude that a factual basis exists from anything that appears on the record." (internal quotation marks omitted)).

To support his contention that the court misunderstood its legal obligation, Juarez points to two statements made by the district court during the plea colloquy:

> You see, Mr. Juarez, . . . if you don't think that you committed the crime, if you don't think that you did this . . . we'll have to try the case. . . . If you

> think that you didn't commit this crime, then you're entitled to a trial by jury, and we'll proceed. I'm not going to allow you to plead guilty unless I'm persuaded that you actually did what you're pleading guilty to.

J.A. 61-62.

> You can't accept the charge and plead guilty in this court unless you actually transported this young woman for purposes of prostitution. If you didn't do it, I'm not going to accept your plea.

J.A. 64.

In our view, these statements show nothing more than the court pursuing its obligation to ensure that the plea was voluntary and supported by a factual basis. See Fed. R. Crim. P. 11(b)(2 & 3). Simply because the district court is not required to rely solely on the Rule 11 hearing, however, does not mean that the court abuses its discretion if it chooses to rely on the Rule 11 hearing. In this case, the court exercised its discretion to reject the guilty plea because, in its estimation, Juarez refused to admit to the core conduct of the offense, thus raising questions about the factual basis for the plea. In light of the "deference [that we must accord] to the trial court's decision as to how best to conduct the mandated colloquy with the defendant," United States v. DeFusco, 949 F.2d 114, 116 (4th Cir. 1991), we cannot conclude that the court abused its discretion in this respect.

8

Relying primarily on United States v. Mancinas-Flores, 588 F.3d 677 (9th Cir. 2009), Juarez also contends that the court abused its discretion because it failed to articulate its reasoning for rejecting the guilty plea.  In Mancinas-Flores, the district court gave no reason for rejecting the defendant's plea and its reasons were not apparent from the record, thus leaving the Ninth Circuit to guess whether the district court considered the defendant's plea to be a standard plea, a nolo contendere plea, or a plea pursuant to North Carolina v. Alford, 400 U.S. 25 (1970).

In the instant case, however, the court made its reasons abundantly clear—the court found an insufficient factual basis for the plea after Juarez continually refused to admit to the core conduct of the offense.  Under these circumstances, the district court exercised its "wide discretion," Morrow, 914 F.2d at 611, and refused to accept the plea.  We cannot say the court abused its discretion in this regard.

IV.

For the foregoing reasons, we affirm.

AFFIRMED